## Abner Taylor v. Thomas Snell.

1. INTEREST—*As Between Partners.*—Interest is not allowable on the settlement of partnership accounts, where no unreasonable delay or improper use of the partnership funds is shown.

**Bill,** to settle partnership accounts. Error to the Circuit Court of De-Witt County; the Hon. LYMAN LACEY, Judge, presiding. Heard in this court at the May term, 1898. Affirmed. Opinion filed December 2, 1898.

MOORE & WARNER, attorneys for plaintiff in error.

RICHARD A. LEMON, attorney for defendant in error.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

Thomas Snell, the defendant in error, as complainant, on December 9, 1875, filed in the Circuit Court of DeWitt County his bill in chancery against Abner Taylor, the plaintiff in error, as defendant, in which he averred that about the year 1870 he and Abner Taylor, placing mutual confidence in each other, by agreement, became partners in the business of buying and selling real estate in equal

Taylor v. Snell.

shares as to profits or losses—the business to be carried on
at Chicago under the name and style of Snell and Taylor;
that the copartnership thus formed was commenced Decem-
ber 31, 1870, and its business carried on at Chicago under
the said firm name, and has since continued hitherto; that
Abner Taylor, for and in the name of the firm, purchased a
certain tract of land containing twenty-seven acres in the
E. ½ N. W. ¼ Sec. 8, T. 39, R. 14 E., 3d P. M., in Cook
county, Illinois; that said tract of land, according to the
intention with which it was purchased, was divided into
lots, and as such sold; that Abner Taylor has sold and con-
veyed all of said lots, received all the moneys that have
been paid on the same by persons purchasing, and has also
received all notes, bonds, securities, etc., arising out of the
sale thereof, amounting to the sum of $100,000; that Abner
Taylor has ever refused, and still refuses, to account to
complainant for any part of such moneys, notes, bonds,
securities, etc.; and that there has not been any settlement
or adjustment, between the complainant and said Taylor, of
said copartnership business, for six years and upward, and
that the accounts respecting the same are still open and
unliquidated, and the amount of money due said copart-
nership, from said Taylor individually, is very considerable,
and much more than his share or proportion thereof; and
praying process against Taylor, and that he be required, but
not under oath, to make full, true and perfect answer to the
bill, and for the reason and under the circumstances afore-
said, the copartnership business of Snell and Taylor may
be by the court decreed to be dissolved, and that an account
may be taken, under the order and direction of the court,
of all of said copartnership dealings and transactions,
which are open and pending between the partners, and
what thereupon shall appear due from Taylor to complain-
ant may be decreed to be paid by him; and that in the
meantime a writ of injunction may be issued restraining
Taylor from drawing, making, indorsing, or negotiating
any note or bill or security whatever, for or on account of,
or in the name of said firm, or from receiving or keeping

any money, bill or security for or on account of said copartnership funds, or from using or employing said copartnership funds or any part thereof, and from further intermeddling with the books, papers, bills, notes, cash, and securities in said business; and that a proper person may be appointed by the court as a receiver, etc.

On December 9, 1875, a summons was issued out of the court on said bill, and duly served the next day on Abner Taylor; the proceeding was regularly continued without any other orders of the court therein, or answer from Taylor, until September 2, 1889, when Taylor filed a plea and answer as follows:

"The plea of Abner Taylor. defendant, to a part of the bill of complaint of Thomas Snell, complainant.

The defendant, by protestation not confessing or acknowledging all or any part of the matters or things in the complainant's bill mentioned to be true, etc., doth plead to a part thereof, and, for plea, says that as to so much and such part of the complainant's bill as seeks an account of and concerning the dealings and transactions therein alleged to have taken place between the complainant and the defendant at any time prior to the first day of January, 1875, the defendant for plea thereto, says that on, to wit, the first day of January, 1875, which was previous to the filing of said bill, the complainant and this defendant made up, stated and settled their accounts of all sums of money which the defendant had before that time received either from the complainant, or from the complainant and defendant as partners, and of all matters and things thereunto relating, or at any time before the said first day of January, 1875, being or depending between them in relation to their copartnership dealings, and in respect of which the complainant's bill has since been filed; and the complainant, after a strict examination of said account and every item and particular thereof, which the defendant avers according to the best of his knowledge and belief to be true and just, did approve and allow the same, and actually received from the defendant the sum of one thousand dollars, the balance of said account, which by said account appeared to be justly due from the defendant, and the complainant then and there, in consideration thereof, released and discharged the defendant from any and all liability or obligation to him on account of said copartnership dealings up to that time.

Therefore the defendant pleads said settlement in bar to so much of the complainant's bill as is hereinbefore particularly mentioned, and prays the judgment of the court whether he ought to be compelled to make any further answer to so much of said bill as is before pleaded to.

And for answer to the residue of said bill, this defendant says that he admits that about the year 1870, to wit, in 1868, the complainant and defendant, placing mutual confidence in each other, entered into an agreement to become partners in the business of buying and selling real estate, in equal shares as to profit and loss, but denies that it was carried on in the name of Snell & Taylor; and charges it was carried on in the name of this defendant and was limited to the purchase and sale of the lands hereinafter described and none other.

He denies that said co-partnership commenced on the 31st day of December, A. D. 1870, but charges it commenced some time in the year 1868; the exact date he can not now give, but will show on the hearing hereof, but he denies it was ever carried on in the name of Snell & Taylor.

Further answering, he denies that he, for and in the name of Snell & Taylor, purchased a tract of land containing twenty-seven acres in the east half of the northwest quarter, Section 8, Township 39 N., R. 14 E. of 3d P. M. in Cook county, Illinois, but states the truth to be that he purchased it in his own name and for his individual purposes long before the formation of said copartnership, and that afterward, in the year 1868, he, at the earnest solicitation of said Snell, allowed him to become the owner of an undivided one-half thereof, and that, from that time until it was sold, owned it as partners; he admits that said land was divided and subdivided into lots and known as Taylor's subdivision, and the most, if not all of it, sold.

He denies that he sold and conveyed all of said lots and received all the money that had been paid on the same, and has also received all the notes, bonds, etc., arising out of the sale of said lots, amounting to the sum of one hundred thousand dollars, and avers the truth to be the complainant sold and conveyed a large number of said lots and received the proceeds of the same, which he continues to hold, and for which he refuses to account to this defendant.

He denies that he retained any of the money or other property belonging to the said firm, and that he has ever refused to account to the complainant for any portion of that which he did receive for said firm, but states the truth

to be that on, to wit, January 1, 1875, he accounted to the complainant for all the money he, the defendant, had ever received for or on account of said firm, and there was a full settlement of all their copartnership dealings between them up to that time, each one of them receiving the full amount due him from the firm on account of all sales made to the firm by either of them at that time.

This defendant conveyed to the complainant lot twenty-one in said subdivision; the complainant was to hold it and sell it as the property of the firm, and account to the firm for its proceeds, and this defendant charges the complainant has never accounted for said last mentioned lot or its proceeds, although, as this defendant is informed and believes, he sold the same for a large sum of money, which he still retains.

The defendant denies that the complainant is entitled to the relief, or any part thereof, in this bill demanded, but says this defendant is entitled to have the complainant account to him for this last-mentioned lot, which he prays he may be required to do."

And afterward, at the August term, 1890, of the court, there was filed by the complainant a replication, denying the truthfulness of the facts stated in the plea and answer, and insisting that the facts set out in the bill were true.

At the March term, 1891, the issue joined upon the plea and answer, on the question of a settlement of the partner-ship business, was heard and evidence taken, and the court found that there had been no such settlement, and referred the case to the master to take testimony and state an account between Snell and Taylor. The master did take evidence and reported the same, with an account stated between the parties, to which exceptions had been made before the master by each party and overruled by him; upon which evidence and account of the master the proceeding was heard by the court, together with the exceptions made by the parties to the master's report, account and rulings thereon, and the court, on April 11, 1895, at its March term, 1895, after sustaining certain exceptions upon each side, and recasting the account in accordance with its rulings on the exceptions, found that there was owing to the complainant Snell, by the defendant Taylor, on December 9, 1875, the sum of

$5,071.96, with interest thereon from that time until the hearing, amounting to $5,693.51, making in all $10,765.47, and decreed that Taylor pay that amount to Snell, and also that Taylor pay all the costs.

Taylor prosecutes a writ of error from this court to reverse that decree, and insists that the account as stated by the master, and as restated by the court, is erroneous; and that the court erred in entering the decree for Snell, when it ought to have been for him.

The evidence shows that some time in 1868 Snell and Taylor did form a copartnership, and as such partners they owned and platted into lots a tract of land in Cook county, and sold the same out to purchasers at a profit of many thousand dollars over its cost. Snell lived in DeWitt county, Illinois, while Taylor lived in the city of Chicago, and had entire charge of the partnership business, which was conducted in Chicago in a real estate office, where the firm had employed a salesman and bookkeeper by the name of Salter, who made most of the sales and kept all of the books of Snell & Taylor in this copartnership business, and rendered to Snell quarterly statements of the condition of the firm's affairs, as shown by the books, and Snell and Taylor had frequent settlements up to the time of the great "Chicago fire" in 1871, when all the books and papers of the firm were destroyed. After the fire Snell went to Chicago, and having with him the three last quarterly statements sent him by their clerk, he and Taylor divided considerable of the undivided proceeds of the lots sold up to that time and a new set of firm books was then started. After that and up to the fall of 1874 the firm continued to sell lots as before, Taylor and the clerk running the firm business in their office in Chicago, and Snell residing in Clinton, but often going to Chicago, and when there would, at times, look over the business and receive from Taylor some of the proceeds of the lots that had been sold; and after that time the business of selling lots continued, but the evidence is conflicting as to whether Taylor sold them as an individual or partner.

It is claimed by the plaintiff in error, Taylor, that the

books of the firm, as kept by the clerk, show—and the fact
was—that he and Snell had a settlement of their firm mat-
ters on October 8, 1874, and they then divided all the assets
of the firm not before then divided, except one lot which
Snell took, and was to sell and account to him for one-half
the proceeds thereof which, up to the time the decree was
entered, he had not done, although he had sold the lot for
$2,500. The defendant in error claims, however, that no
such settlement occurred in October, 1874, nor was there
any division between him and Taylor then as claimed. On
this question of fact the evidence is conflicting. The books
of the firm contain many entries, and there were in evidence
letters written by Taylor to Snell after the fall of 1874,
which are very inconsistent with his testimony on the ques-
tion that there was a settlement and division between him
and Snell in October, 1874, as he, Taylor, claimed; and
Taylor's letters to Snell, written between 1874 and 1889,
corroborate Snell and contradict Taylor.

We have at considerable pains examined the copies of the
books of Snell & Taylor as kept by their bookkeeper, Salter,
and the evidence of the witness Chandler, who played
the part of a go-between, as between Snell and Taylor, in an
effort to effect a settlement between them in October, 1874,
and which he says he did effect; also the testimony of the
bookkeeper, Salter, and that of Snell and Taylor as it appears
in the transcript of the certificate of evidence in this case,
and we are, after a careful consideration thereof, satisfied
that the learned chancellor, who heard this case in the court
below, was justified therefrom in stating the account between
these two partners as he did, except he improperly charged
in the account the item of $5,693.51 against Taylor, it being
the interest on $5,071.96 from December 9, 1875, the date
the bill was filed, until April 11, 1895, the date the decree
was entered. As these parties were partners, the balance
of $5,071.96, of the firm assets, found to be in the hands of
Taylor on an accounting, ought not to bear interest in favor
of his partner, Snell, unless it was shown (and it was not) that
Taylor had promised to pay interest or had improperly used

or neglected to account for the assets of the partnership, on demand, before the bill for an accounting was filed, or after the bill was filed by throwing obstacles in the way of collection, by some circumvention, contrivance or management of his own which had induced the court to withhold the hearing of the proceeding against him longer than it otherwise would have done. The Imperial Hotel Company v. The H. B. Claflin Company, 175 Ill. 119; Randolph v. Inman, 172 Ill. 575; Brownell v. Steere, 128 Ill. 209.

Neither the evidence nor the bill shows that before it was filed Snell requested or procured an accounting from Taylor of these firm funds; and after the bill was filed it does not appear from the record that Taylor did interpose any unwarrantable applications for delay, or in any manner seek to delay a hearing, but on the contrary the long delay between the filing of the bill and a hearing and decree was caused solely by Snell.

Hence we think the item of $5,693.51, as interest, charged by the court in its decree herein to Taylor, was erroneously so charged, and for that reason the decree will be reversed as to that much and affirmed for the residue of $5,071.96.

Decree affirmed in part and reversed in part.